# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DONNA BLIVEN,

       Plaintiff,

v.                                          CV 14-479 LH/WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Donna Bliven applied for supplemental security income on August 30, 2012, based on affective disorder, personality disorder, end-stage liver disease, Hepatitis C, depression, anxiety, insomnia, suicidal thoughts, lack of stamina, and memory problems. (Administrative Record "AR" 61-62, 172.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on Bliven's Motion to Reverse or Remand Administrative Agency Decision and a response filed by the Commissioner of the Social Security Administration ("SSA"). (Docs. 24, 27.) Bliven did not file a reply. For the reasons explained below, I recommend that the Court grant Bliven's motion and remand this case to the SSA for proceedings consistent with this Proposed Findings and Recommended Disposition ("PFRD").

## STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I

must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4) & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The

ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Bliven is a forty-eight-year-old woman with a GED. (AR 173.) Bliven has no relevant employment history. (AR 31; *see* AR 172 (Bliven reported that she has "never worked").) Bliven claims disability beginning on April 14, 2003. (AR 62.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Bliven submitted records dating to January 3, 2001, for diagnosis and treatment of Hepatitis C and advanced cirrhosis of the liver. (AR 368, 382.) References to Bliven's mental health date also to January 2001. (AR 367, 368.)

Carl Adams, Ph.D., performed a Mental Status Examination of Bliven on December 12, 2012. (AR 250.) Dr. Adams found that Bliven had a disregulated mood, though she was able to

maintain good eye contact and pay attention. (*Id.*) Dr. Adams determined that Bliven was a reasonably good historian and her insight was grossly intact. (*Id.*) However, Bliven had poor psychological insight and her judgment was "very questionable." (*Id.*) Bliven did not report a history of perceptual distortions or hallucinations. (*Id.*) Dr. Adams found that Bliven has no limitations with instructions, whether detailed or short and simple; moderate limitations with concentration and task persistence; moderate limitations with adaptation to changes; and no limitations being aware of normal hazards. (AR 252.) Dr. Adams diagnosed Bliven with major depressive disorder, chronic, mild-to-moderate, untreated; mood disorder due to medical conditions of Hepatitis C and cirrhosis; and a personality disorder with borderline, dependent, and self-destructive traits. (AR 252-53.) Dr. Adams assessed Bliven with a GAF of 60.[1] (AR 253.)

Consultative examining psychologist Steven Baum, Ph.D., met with Bliven on August 8, 2013. (AR 385.) Dr. Baum conducted a clinical interview and reviewed medical records from Dr. Adams and other providers. (*Id.*) Dr. Baum noted that Bliven reported no close social relations and was unable to complete psychological testing during the same session as her interview. (*Id.*) Bliven stated that she was able to perform basic household tasks, but was limited by anxiety and stayed in bed most of the day. (*Id.*) Dr. Baum conducted psychological tests of Bliven, including the Minnesota Multiphasic Personality Inventory, Second edition ("MMPI-2"). (AR 368.) This test showed that Bliven had elevated results on seven clinical scales, indicating multiple pathologies and a failure to cope with normal daily stress such that Bliven existed in an

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Bliven's mental health providers used this scoring method.

overwhelmed state of being that make her an appropriate candidate for psychiatric admission. (*Id.*)

Based upon his interview with Bliven, in which she reported experiencing chronic psychotic symptoms in the form of auditory hallucinations, and her psychological testing, Dr. Baum diagnosed Bliven with schizophrenia and a Cluster B personality disorder.[2] (AR 387.) Dr. Baum assessed Bliven with a GAF of 32.[3] (*Id.*) Dr. Baum noted that Bliven's "marginal occupational, social, and substance abuse history can be better understood as attempts to cope with psychiatric impediments re: motivation, mood, thought concentration and attentional problems." (*Id.*) He went on to remark that "[c]ognitively, . . . [Bliven has] learning disabilities and . . . meets DSM-V criteria for mild cognitive impairment[.]" (*Id.*)

Dr. Baum summarized his findings in a "statement of opinion of abilities." (*Id.*) Dr. Baum determined that Bliven had moderate-to-marked limitations understanding and remembering detailed or complex instructions; mild-to-moderate limitations understanding and remembering very short and simple instructions; moderate-to-marked limitations with sustained concentration and task persistence in carrying out instructions; moderate-to-marked limitations attending and concentrating; moderate-to-marked limitations working without supervision; marked limitations interacting with the public, coworkers, or supervisors; mild limitations adapting to changes in the workplace and being aware of normal hazards in the workplace; and moderate limitations using public transportation or traveling to unfamiliar places. (*Id.*) Dr. Baum found that Bliven could not manage her own benefits due to cognitive impairments. (*Id.*)

---

[2] "Cluster B" personality disorders include "Antisocial, Borderline, Histrionic, and Narcissistic Personality Disorders. Individuals with these disorders often appear dramatic, emotional, or erratic." *Id.* at 685.

[3] A score between thirty-one and forty is assessed when the patient is believed to have "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* at 34.

The ALJ held a hearing on August 13, 2013, at which Bliven testified. (AR 40-60.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued his decision on September 18, 2013. (AR 20.) At step one, the ALJ determined that Bliven has worked since her application date of August 30, 2012, but has not engaged in substantial gainful activity. (AR 25.) At step two, the ALJ found that Bliven has the severe impairments of an affective disorder, anxiety, schizophrenia, Hepatitis C, and a liver disorder. (*Id.*) The ALJ concluded that Bliven does not have an impairment or combination of impairments that meet or medically equal anything on the Listing of Impairments. (*Id.*) The ALJ specifically considered Listings 12.04 and 12.06, and noted that Bliven experiences mild restrictions in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with regard to concentration, persistence or pace. (AR 26.)

At phase one of step four, the ALJ determined that Bliven has the RFC for light work, but can only occasionally climb ramps or stairs; can never climb ladders or ropes; must avoid concentrated exposure to operation or control of moving machinery, unprotected heights, and hazardous machinery; can understand, remember, and carry out simple instructions and make commensurate work-related decisions; can respond appropriately to supervision, coworkers, and work situations; can deal with routine changes in the work setting; can maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the day; and can only occasionally interact with the public and with coworkers, but she can be around coworkers during the work day. (AR 27.)

The ALJ summarized Bliven's hearing testimony and found that Bliven's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 28.) In particular, the ALJ pointed out that Bliven explicitly denied experiencing

hallucinations with every provider except Dr. Baum. (*Id.*) The ALJ stated that he "generally disregarded [Bliven's] subjective claims, unless they can be corroborated by reliable evidence." (*Id.*)

The ALJ then summarized the record, including the opinions of Drs. Adams and Baum. The ALJ stated that he gave "little weight" to Dr. Baum's opinion because Dr. Baum "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Bliven] and seemed to uncritically accept as true most, if not all, of what [Bliven] reported. Yet, . . . there exist good reasons for questioning the reliability of . . . [Bliven's] subjective complaints." (AR 30.) The ALJ also determined that Dr. Baum's opinion was inconsistent with Bliven's activities of daily living.

At phases two and three of step four, the ALJ determined that Bliven has no past relevant work. The ALJ concluded, at step five, that Bliven could perform other work. (AR 32.) Therefore, the ALJ found that Bliven was not disabled. (AR 33.)

DISCUSSION

Bliven argues that the ALJ erred by failing to state the weight given to the opinions of consultative psychologists Dr. Adams and Dr. Baum. The Commissioner contends that the ALJ adopted Dr. Adams's opinion in the RFC assessment and that the ALJ reasonably determined that Dr. Baum's opinion was entitled to little weight.

I.      **Dr. Adams's Opinion**

Bliven contends that the ALJ erred at phase one of step four by failing to explicitly explain the reasons for rejecting a medical source opinion. Bliven cites *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007), for the proposition that an ALJ must explain his reasons for

rejecting an examining psychologist's opinion about the claimant's functional limitations, even when that rejection is implied by not adopting that opinion in the RFC assessment.

The Commissioner responds that the ALJ implicitly adopted Dr. Adams's opinion and was therefore not required to conduct a detailed analysis of the opinion pursuant to Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[4] Citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012), the Commissioner concludes that the ALJ's failure to explain that he accorded significant weight to Dr. Adams's opinion does not warrant remand.

As discussed above, Dr. Adams opined that Bliven experiences no limitations being aware of normal hazards or with understanding, remembering, and carrying out detailed or short and simple instructions. She experiences moderate limitations adapting to changes and with concentration and task persistence. Bliven also experiences moderate-to-significant limitations interacting with coworkers and supervisors.

The ALJ relevantly limited Bliven's RFC in that Bliven can

understand, carry out and remember simple instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers and work situations; be able to deal with routine changes in the work setting; must be able to maintain concentration, persistence and pace for up to and including 2 hours at a time with normal breaks throughout the workday. However[,] she is suitable for jobs requiring only occasional interaction with the public and coworkers – she can be around coworkers during the work day, but can have only occasional [interaction] with them.

(AR 27.)

When "the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Medical opinions are evaluating according to several enumerated factors, including 1) the examining

---

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

relationship; 2) the length, nature, and extent of a treatment relationship; 3) supportability of the medical source's opinion; 4) consistency of the opinion with the record as a whole; 5) the specialization of the person providing the opinion; and 6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c).

Here, the ALJ clearly applied Dr. Adams's opinion to the RFC assessment by determining that Bliven can understand, remember, and carry out simple instructions and make related decisions. The ALJ also adopted Dr. Adams's opinion to the extent that the RFC assessment limits Bliven to "occasional" interaction with coworkers. However, Dr. Adams expressly determined that Bliven experiences "moderate limitations adapting to changes[,]" "moderate-to-significant limitations interacting with coworkers and supervisors[,]" and "moderate limitations with concentration and task persistence." (AR 252.) The ALJ determined that Bliven is "able to deal with routine changes in the work setting[;]" can "respond appropriately to supervision, coworkers and work situations[,]" even though she can have "only occasional interaction" with other people while at work; and can "maintain concentration, persistence and pace for up to and including 2 hours at a time with normal breaks throughout the workday." (AR 27.)

The ALJ appears to have rejected Dr. Adams's opinion with regard to Bliven's ability to adapt to changes; respond appropriately to supervisors, coworkers, and the public in work situations; and maintain concentration, persistence or pace. In *Haga*, the Tenth Circuit rejected the argument that a moderate impairment means an ability to function satisfactorily. 482 F.3d at 1208. The ALJ's failure to include these moderate limitations in Bliven's RFC assessment, or provide appropriate reasons why he rejected these portions of Dr. Adams's opinion, constitutes legal error. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (remanding where

RFC failed to reflect moderate limitations identified by psychologist). On remand, the ALJ will apply the factors of 20 C.F.R. § 416.927(c) and explain why he did not adopt portions of Dr. Adams's opinion, as required by SSR 96-8p.

**II.      Dr. Baum's Opinion**

Bliven asserts that the ALJ erred at phase one of step four by failing to apply the factors in 20 C.F.R. § 416.927(c) to Dr. Baum's opinion. Bliven also argues that the MMPI-2 constitutes objective medical evidence that must be considered by the ALJ. The Commissioner responds that the ALJ properly assessed Dr. Baum's opinion and explained his reasons for discounting Dr. Baum's opinion, namely that Bliven's subjective reports were not credible.

When considering the weight to assign to a medical opinion, the ALJ must consider the factors outlined in 20 C.F.R. § 416.927(c). The ALJ noted that Dr. Baum was a consultative examining psychologist, reiterated his disregard of Bliven's subjective complaints based on his determination that Bliven is not entirely credible, and determined that Dr. Baum's opinion was inconsistent with Bliven's reports of her activities. The ALJ did not discuss the objective aspects of Dr. Baum's opinion, including Dr. Baum's use of the MMPI-2.

The ALJ appeared to adopt Dr. Baum's opinion to the extent that the ALJ found Bliven to have the severe impairment of schizophrenia. No other provider diagnosed Bliven with schizophrenia. As noted in Dr. Baum's report, Dr. Baum based the schizophrenia diagnosis primarily on the results of the MMPI-2. Dr. Baum also relied on the MMPI-2 results when making his determination of Bliven's abilities.

The ALJ failed to explain why he adopted parts of Dr. Baum's report and rejected others. Relevant to this case, the ALJ failed to discuss the objective medical evidence, including the MMPI-2, in Dr. Baum's report after he discounted Bliven's subjective complaints. This, too,

constitutes reversible error. On remand, the ALJ will consider the objective medical evidence in Dr. Baum's report and take the objective evidence into consideration when weighing the opinion, as required by 20 C.F.R. § 416.927(c), and explain why he did not adopt parts of Dr. Baum's opinion as required by SSR 96-8p.

## CONCLUSION

I recommend that the Court find that the ALJ committed legal error at the RFC stage by failing to appropriately assess the opinions of Dr. Adams and Dr. Baum in accordance with 20 C.F.R. § 416.927(c) and SSR 96-8p. I recommend that the Court remand this case for proceedings consistent with this PFRD and direct the ALJ to appropriately evaluate the opinions of Drs. Adams and Baum and explain any rejected portion of these opinions.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.

11